IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 10, 2019 Session

**HENRY DARNELL TALLEY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2014-A-91       Steve R. Dozier, Judge**

_____

**No. M2018-01756-CCA-R3-PC**
_____

In 2016, the Petitioner, Henry Darnell Talley, pleaded guilty to attempted first degree murder, reckless aggravated assault, reckless endangerment, being a convicted felon in possession of a weapon, employing a weapon during the commission of a dangerous felony, and violation of a protective order. The trial court imposed an effective sentence of thirty-three years. The Petitioner appealed his sentence as excessive, and this court affirmed. *State v. Henry Darnell Talley*, No. M2016-01632-CCA-R3-CD, 2017 WL 1830100, at *1 (Tenn. Crim. App., at Nashville, May 5, 2017), *perm. app. denied* (Tenn. Aug. 16, 2017). In 2017, the Petitioner filed a petition for post-conviction relief alleging ineffective assistance of counsel. Following a hearing, the post-conviction court denied relief. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ROBERT L. HOLLOWAY, JR. and TIMOTHY L. EASTER, JJ., joined.

Ryan C. Davis, Nashville, Tennessee, for the appellant, Henry Darnell Talley.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jennifer M. Charles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Background**

## A. Guilty Plea

This case originates from the Petitioner's shooting the victim, the mother of his child, multiple times inside a retail store in Nashville. This event led to the Petitioner being indicted for attempted first degree murder, reckless aggravated assault, reckless endangerment, burglary,[1] being a convicted felon in possession of a weapon, employing a weapon during the commission of a dangerous felony, and violation of a protective order. *Id.* at *1. The Petitioner entered into a plea agreement with the State, pleading guilty to all charges with the trial court to determine his sentence for the attempted first degree murder conviction; as to the remaining convictions, the Petitioner received an effective ten-year sentence. *Id.*

This court summarized the following events underlying the Petitioner's guilty plea:

> Had the parties gone to trial on [the Petitioner's] case number 2014-A-91, the State anticipates the facts would have revealed that on September the 4th, of 2014, [the Petitioner] drove to the Value Vision Eyewear Store located in Rivergate here in Davidson County. He drove a maroon Pontiac and parked the car in the parking lot.
>
> . . . .
>
> Previous to this day July, 2013, the child's mother, Ronkeisha Briley had obtained an order of protection banning [the Petitioner] from contacting her or coming to her work place. That day [the Petitioner] was armed with a .45 caliber pistol, which he was prohibited from owning due to his prior felonies of manslaughter, and felon in possession of a weapon. He walked into the store that day with the gun tucked in his waistband intending to kill Ronkeisha Briley who was working her shift.
>
> He proceeded up to the counter where she was on the phone and asked where he could get his glasses repaired. She motioned to the middle of the store. He stood there watching her until she got off of the phone and then said under his breathe that she was being disrespectful. He then pulled the gun from his waistband and shot her at point blank range as she stood at the counter.
>
> Standing next to her was employee Brittany Barbee who began to

---

[1] The record indicates that the burglary charge was dismissed prior to the entry of the Petitioner's plea.

scream and pulled Ronkeisha Briley up off of the floor and they both ran down a hallway into the pretest eye exam room. Following behind was [the Petitioner] with the gun. The two wom[e]n crouched down bellow [sic] a table in the pretest room [ ] and [the Petitioner] stood over them continuing to shoot. Ms. Briley was shot an additional three times and the bullet grazed Ms. Brittany Barbee's leg wounding her.

[The Petitioner's] gun began to make a clicking noise and it had jammed. Employee Neal Knight looked around the corner and saw [the Petitioner] with the gun in his hand and got a clothing description which matched Ms. Briley's and Ms. Barbee's description. [The Petitioner] was wearing blue jeans and a checkered blue and green shirt that day.

[The Petitioner] then walked out of the room and left the store where employee William Bolster was watching him as he got into the maroon Pontiac. Employees and customers began to run out of the store, some of them calling 911 giving descriptions of [the Petitioner]. Customer Marcus Rowe stayed on the phone with 911 as he gave a description of the car [the Petitioner] got into.

As Ronkeisha Briley lay on the floor in the pretest room, she managed to walk down a hallway, in which she collapsed in the doorway. Employee Neal Knight and Brittany Barbee tended to her injuries until police arrived.

When police eventually got there, Ms. Briley made statement to Officer Joe Pennington (phonetic) that—that it was her child's father who had shot her. Paramedics arrived and Ms. Briley passed out from internal bleeding on the way to Vanderbilt Trauma Center. Officers Pile and Jonathan Weaks received the 911 call and had driven up behind the maroon Pontiac as [the Petitioner] slowly did donuts around the parking lot in his car looking at his passenger seat.

He then pulled out of the parking lot with the officers behind him and pulled on to Gallatin road [sic] stopping in front of the olive guardden [sic]. The officers watched as he took the .45 caliber pistol and shot himself once in the chin. The bullet exited his—the bridge of his nose and blew out through the sunroof.

The officers drew their guns and approached to tell [the Petitioner] to get out of the car with his hands up. [The Petitioner] followed their

instructions and they handcuffed him and retrieved the gun that was lying in the floorboard of the driver's seat.

TBI agent—special agent Terry Arnie did a ballistics comparison on the gun that was found in [the Petitioner's] Pontiac, and the shell cases that were found inside the Value Vision. She determined the casings were fired from that gun . . . the bullets with those casings were fired from that gun. [The Petitioner] was responsive, could communicate with the officers an [sic] was able to nod and shake his head at their questions despite missing his jaw.

He was then taken to Vanderbilt trauma center. Ms. Briley had four operations and continues to have lasting health issues to this day. [The Petitioner] was charged with reckless aggravated assault due to the injuries that Brittany Barbee received with his gun. He was charged with reckless endangerment for placing Neal Knight and all of the other Value Vision employees as well as the customers in the zone of danger with the firearm.

He violated the order of protection by coming into the place of business where Ronkeisha Briley was work[ing]. And he employed a firearm and discharged the weapon during the commission of an attempted first-degree murder of Ronkeisha Briley.

The trial court advised the [Petitioner] of the charges against him, the rights he waived in entering a guilty plea, and reviewed the plea agreement with him. The [Petitioner] entered a plea of guilty to the offenses.

*Id.* at *1-2. The trial court held a sentencing hearing and imposed a twenty-three-year sentence for the attempted first degree premeditated murder conviction. *Id.* at *4. The Petitioner appealed the trial court's decision to impose a twenty-three-year sentence, arguing that it was excessive. On appeal, this court affirmed the trial court's judgment, concluding that "the trial court clearly stated its reasons for the sentence imposed," and "considered the purposes and principles of the Sentencing Act and did not abuse its discretion." *Id.*

## B. Post-Conviction

The Petitioner filed a *pro se* petition for post-conviction relief following which the post-conviction court appointed counsel, who filed an amended petition alleging that his guilty plea was not knowingly and voluntarily entered because he had received the

4

ineffective assistance of counsel. The Petitioner alleged that his trial counsel ("Counsel") was ineffective for failing to: file a motion to withdraw his guilty plea prior to sentencing; properly explain the Petitioner's sentencing exposure; properly investigate witnesses for the purpose of impeachment; and file a motion to withdraw from representing the Petitioner after the Petitioner filed a complaint.

The post-conviction court held a hearing, at which the following evidence was presented: Counsel testified that he was employed by the Metro Public Defender's Office in Nashville and had been so employed for over eight years. He stated that he represented the Petitioner in this case, which resulted in the Petitioner pleading guilty to six of the seven indicted charges; he recalled that the burglary charge was dismissed.

Counsel recalled relaying several offers between the State and the Petitioner. The Petitioner indicated to Counsel that he was willing to serve an eight-year sentence, during their continued discussions about his maximum sentencing exposure. Counsel and the Petitioner had "lots of conversations" about the Petitioner's exposure at trial. Counsel recalled a meeting with the Petitioner where Counsel showed him "a packet" outlining all the charges and sentencing considerations. He agreed that this meeting occurred three weeks before the Petitioner entered his guilty plea. Counsel recalled that the Petitioner's exposure was up to fifty years, and Counsel was concerned that, given the evidence, the Petitioner would receive a "substantial" sentence. Following their meeting, at the Petitioner's request, Counsel proposed a fifteen-year sentence, an offer the State rejected. Counsel had another discussion with the Petitioner, following which, he conveyed to the State the Petitioner's willingness to plead guilty in exchange for a twenty-three-year sentence to "settle" the case. Throughout that same day, Counsel negotiated with the State "back and forth" and eventually they agreed to the settlement to which the Petitioner ultimately pleaded guilty.

The Petitioner entered his guilty plea the following week, on June 6, 2016. Two weeks later, on June 20th, the Petitioner contacted Counsel and left a message stating that he wanted to withdraw his plea. The Petitioner believed he had pleaded guilty to too lengthy of a sentence and would have fared better at trial. Counsel received a letter from the Petitioner that same week in which the Petitioner stated he wanted to withdraw his plea. On June 22nd, Counsel met with the Petitioner to discuss his request, and the Petitioner stated that he felt Counsel had mislead him with regard to his sentencing exposure for the conviction for employing a firearm during the commission of a dangerous felony. Counsel, however, left the June 22nd meeting believing that the Petitioner wished to go forward with the sentencing hearing. A few days later, Counsel received another message from the Petitioner asking to withdraw his plea. Counsel was not concerned that the Petitioner failed to understand what his plea contemplated, but he was concerned that the Petitioner did not understand his potential sentencing exposure at

5

trial. Counsel continued to explain to the Petitioner his sentencing exposure at trial based on the numerous outcomes. As to the Petitioner's concern that he had been incorrectly advised about the employment of a firearm charge, Counsel explained again the law surrounding the charge and offered to withdraw the Petitioner's plea if he felt the explanation had not been satisfactory prior to the entry of the plea.

Counsel did not inform the trial court of his discussions with the Petitioner about possible withdrawal. Based on their numerous conversations, Counsel believed the Petitioner wished to go forward with sentencing. Counsel testified that he was aware that the Petitioner filed a professional complaint against him following the entry of the plea but prior to sentencing. The complaint stated that Counsel had tricked the Petitioner into taking a plea bargain. Counsel did not inform the trial court of the complaint because he did not feel that a conflict of interest arose at that time, nor did the Petitioner request that Counsel withdraw from representation.

Counsel stated that he had approximately ten to fifteen discussions with the Petitioner about his sentencing exposure at trial, which would have been roughly fifty years. Counsel believed that the Petitioner would be subject to consecutive sentences for several convictions, whether mandated by law or because of the nature of the facts.

On cross-examination, Counsel testified that he visited the Petitioner in jail, along with his co-counsel, approximately twenty-one times. Counsel left those meetings with the understanding that the Petitioner wanted to plead guilty or did not want to withdraw his guilty plea; had Counsel been given the impression that the Petitioner wished to withdraw his plea, Counsel would not have proceeded. Had the Petitioner wanted to withdraw his plea on the grounds that he felt as if Counsel had mislead him into entering the plea in the first place, Counsel stated he would have moved to withdraw from representing the Petitioner to allow for new counsel. On the day of the sentencing hearing, the Petitioner did not tell Counsel he wanted to withdraw his plea.

Counsel reiterated that he went over "all possibilities" related to sentencing should the Petitioner have elected to go to trial, including the consecutive sentencing factors that were present, namely that the Petitioner was on probation at the time of the offense and his criminal history.

The Petitioner testified that initially he told Counsel he was willing to plead in exchange for a sentence of eight years. The Petitioner knew he was eligible for a long sentence if found guilty at trial. After pleading guilty, the Petitioner wrote a letter to Counsel stating that he felt it was in his best interest to withdraw the plea with the aim of renegotiating the plea or proceeding to trial. The Petitioner testified that he did not raise his request with the trial court at the sentencing hearing because he was waiting for

Counsel to do so. The Petitioner assumed that he could withdraw the plea after the hearing. The Petitioner recalled that in his conversations with Counsel, Counsel encouraged him to move forward with the sentencing hearing.

The Petitioner later filed a complaint with the Board of Professional Responsibility regarding Counsel's failure to file a motion to withdraw his plea. He then testified that Counsel told him that the plea would be withdrawn after the sentencing hearing; Counsel did not explain how difficult it would be to withdraw the plea at that stage. The Petitioner reiterated that he left Counsel voice mails stating that he wanted to withdraw his plea.

On cross-examination, the Petitioner agreed that he never told the trial court that he did not wish to enter a guilty plea because he expected Counsel to do it for him. Counsel simply told him to go through the "procedures."

The post-conviction court issued an order denying the petition, stating:

*Counsel's Failure to File Motion to Withdraw Guilty Plea*

The Court accredits [Counsel's] testimony in this matter over that of the Petitioner. [Counsel] did testify that the Petitioner reached out to him several times and indicated a desire to withdraw his guilty plea. He also testified that after each time the Petitioner made such a request, he met with him in person and discussed the Petitioner's desires. Finally, [Counsel] testified that he left each of those meetings with the understanding that the Petitioner wished to proceed with his sentencing hearing and not withdraw his guilty plea. It is clear that the Petitioner contemplated withdrawing his guilty plea, and even at times, requested his attorney do so. However, the Court does not find that [Counsel's] representation was deficient because he first met with his client to discuss the pros and cons of filing a motion to withdraw before filing said motion. The Court also accredits [Counsel's] testimony that after further discussions each time, the Petitioner intended to proceed with his sentencing hearing. Accordingly, the Court does not find that [Counsel's] representation in this regard was deficient.

Further, even assuming, arguendo, that [Counsel's] representation was deficient, the Court also finds that the Petitioner has failed to demonstrate that he was prejudiced by this representation. When a petitioner claims ineffective assistance of counsel has prevented the withdrawal of a guilty plea, in order to establish prejudice, the petitioner "must show that there is a reasonable probability that a motion to withdraw

7

the guilty plea would have prevailed." *Laird v. State*, No. M2014-02020-CCA-R3-PC, 2015 WL 3454214, at \*6 (Tenn. Crim. App., June 1, 2015).

. . . .

Here, based on the proof the Court has heard at this time, the Court is not of the opinion that the Petitioner established a fair and just reason to allow the withdrawal of his guilty pleas. Even if [Counsel] filed the motion to withdraw as soon as he became aware of the Petitioner's request to file it, two weeks would have elapsed between the date of his pleas and the filing of the motion. Additionally, while the Petitioner did write a letter to [Counsel] on June 14, 2016, requesting he file a motion to withdraw the pleas, there was still a delay of over one week before any request was made of his attorney, and the Court notes that the Petitioner initially chose to write his attorney rather than call. The Petitioner has offered no explanation for these delays. Further, based on both the Petitioner's testimony and [Counsel's] testimony, the Court is of the opinion that the Petitioner understood what he was pleading guilty to. Though the Petitioner testified at the instant hearing he was confused during the plea colloquy, this is not reflected by the actual transcript of the plea colloquy, as the Petitioner did not ask any questions of the Court. Finally, the Court notes that the Petitioner has significant prior experience with the criminal justice system, including several prior pleas of guilty to other charges. Further, the Court has concerns that the Petitioner was interested in employing the motion to withdraw his guilty pleas as a tactical tool to avoid trial, as he testified that he was planning to withdraw his pleas even at the time that he pled guilty. In light of all of these factors, the Court is of the opinion that the Petitioner has not established that there is a reasonable probability he would have prevailed on his motion to withdraw his guilty pleas.

Accordingly, the Court finds that even if [Counsel's] representation on this matter was deficient, the Petitioner has failed to establish that that he was prejudiced by [Counsel's] representation. Thus, the Court finds the Petitioner is not entitled to relief on this ground.

. . . .

*Counsel's Failure to Withdraw After Complaint Was Filed*

Here, though the Petitioner did file a complaint with the Board, the

8

Court is not of the opinion that the complaint was of such a nature that it created an ethical duty for [Counsel] to withdraw as counsel or even to bring the matter to the Court's attention. Though the Court does find that complaint was brought to [Counsel's] attention in the June 22nd meeting, he spoke with the Petitioner several times after being notified of the complaint and indicated that he felt he was able to continue representing the Petitioner based on them working through the concerns the Petitioner had. Further, the Court finds that [Counsel] spoke with the Petitioner about both of the allegations raised in the complaint—that he had mislead the Petitioner as to the law and that the Petitioner wanted to withdraw his guilty plea. The Court accredits [Counsel's] testimony that after speaking to the Petitioner, the Petitioner did not want to withdraw his guilty plea and understood that [Counsel] had not misled him as to the law. Though the Petitioner claims that [Counsel] was deficient for failing to bring the matter to the Court's attention, the Court disagrees because the Court accredits [Counsel's] testimony that he understood the concerns to have been resolved. Accordingly, the Court finds that [Counsel's] representation was not deficient for failing to withdraw as counsel. Further, even if [Counsel] should have brought the complaint to the Court's attention, because it appears to the Court that no conflict existed, the Petitioner has not shown he was prejudiced. Thus, the Petitioner is not entitled to relief on this ground.

*Voluntariness of Guilty Plea*

The Court does not find any merit to the Petitioner's contention that the guilty plea was not entered into knowingly, voluntarily, and intelligently. The Petitioner claims that he was confused at the time of the plea and that he told [Counsel] before the plea that he did not want to plead guilty. However, the Court accredits the testimony of [Counsel] over that of the Petitioner in this matter. [Counsel] testified that the he believed the Petitioner understood what he was pleading guilty to. Further, the Petitioner did not ask any questions of the Court during the plea colloquy. Additionally, the Court notes that the Petitioner acknowledged he had pled guilty previously and did not struggle to understand what was occurring in those pleas. Though the Petitioner may have felt somewhat rushed to enter the plea, given the State's request any plea petition be signed by the evening of June 3, 2016, the Court does not find that pressure to have been so great as to render the Petitioner's plea involuntary. Accordingly, in light of all of these considerations, the Court finds that clear and convincing evidence establishes the Petitioner's plea was entered into knowingly,

9

intelligently, and voluntarily. Accordingly, the Petitioner is not entitled to relief on this ground.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition for post-conviction relief. He claims that he received the ineffective assistance of counsel when Counsel: (1) failed to act on the Petitioner's written request to withdraw his guilty plea and failed to explain the increased burden of withdrawing a plea after sentencing; (2) failed to request to withdraw from representing the Petitioner after the Petitioner filed a complaint against him. He also contends that his guilty plea was not knowingly and voluntarily entered because of his request to withdraw the plea immediately following its entry. The State responds that the Petitioner has failed to establish that he received the ineffective assistance of counsel or that his plea was involuntarily entered. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a

breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)).

Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at

11

694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

This standard also applies to claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy the requirement of prejudice in a case involving a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he or she "would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). A petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

## A. Failure to Request Withdrawal of Guilty Plea

Tennessee Rule of Criminal Procedure 32(f) affords a defendant two opportunities to seek withdrawal of a guilty plea: 1) before sentence is imposed and 2) after sentencing but before the judgment becomes final. A judgment of conviction becomes final thirty days after entry, and the trial court then loses jurisdiction. *State v. Pendergrass*, 938 S.W.2d 834, 837 (Tenn. 1996). Withdrawal of a guilty plea is permitted prior to sentencing for "any fair and just reason," but after sentencing, withdrawal is available only "to correct manifest injustice." Tenn. R. Crim. P. 32(f)(1)-(2).

The Petitioner contends that Counsel was ineffective by failing to act on the Petitioner's request to withdraw his guilty plea. He claims that he "unequivocally" communicated his request with Counsel and that Counsel led him to believe he should wait until after sentencing to withdraw his plea. The Petitioner further argues that Counsel was ineffective for neglecting to tell the Petitioner of the increased burden of withdrawal after the sentencing phase. The State responds that the Petitioner has failed to prove his claims and cannot overcome his burden of proving prejudice. We agree with the State.

12

The post-conviction court accredited Counsel's version of the events that the Petitioner ultimately communicated to Counsel that he wished to go forward with sentencing following the entry of his guilty plea. The evidence does not preponderate against this finding. Counsel testified that he met with the Petitioner several times after learning of the Petitioner's wish to withdraw his plea; during those meetings, as well as prior to the entry of his plea, Counsel went over with the Petitioner all of the potential outcomes of a trial. After each meeting, Counsel left with the impression that the Petitioner wished to go forward with sentencing. Counsel testified that he would have requested to withdraw the Petitioner's plea had he believed that to be the Petitioner's ultimate wish. The Petitioner agreed that he never raised his desire to withdraw his plea during the sentencing hearing. The post-conviction court did not accredit the Petitioner's testimony that he was told by Counsel that the plea would be withdrawn after sentencing. As such, the Petitioner has not shown that he received the ineffective assistance of counsel because of Counsel's failure to request withdrawal of his guilty plea. The post-conviction court stated that the Petitioner had failed to provide a fair and just reason to withdraw his plea. The Petitioner, therefore, has failed to show that, but for Counsel's inaction, the trial court would have granted his request to withdraw his plea.

As to the Petitioner's argument that Counsel failed to inform him of the ramifications of waiting until after sentencing to seek withdrawal of his plea, the evidence does not preponderate against the post-conviction court's finding that Counsel made a strategic decision not to pursue the withdrawal of the guilty plea based on his discussions with the Petitioner. The evidence was that Counsel's multiple discussions with the Petitioner dealt with the Petitioner's sentencing exposure if he withdrew his guilty plea and went to trial. Counsel's strategy included a decision not to explain the further difficulties involved of withdrawing his plea after the sentencing hearing, which we will not second guess. Accordingly, the Petitioner is not entitled to relief.

### B. Failure to Request to Withdraw from Representation

The Petitioner next contends that he received the ineffective assistance of counsel because Counsel failed to withdraw from representing him after the Petitioner's complaint to the Board of Professional Responsibility about Counsel created a conflict of interest. The State responds that a complaint against an attorney does not mandate withdrawal from representation and that the Petitioner has not provided evidence of actual conduct on the part of Counsel that would have prejudiced the Petitioner and required Counsel's removal from the case. We agree with the State.

As the State argues, "trial counsel is not required to withdraw representation merely because a client has filed a complaint against him with the Board [of Professional Responsibility]." *Doyale Montez Blacksmith v. State*, No. M2017-02323-CCA-R3-PC,

13

2018 WL 4584126, at *5 (Tenn Crim. App., at Nashville, Sept. 24, 2018) (citing *Shaun Alexander Hodge v. State,* No. E2009-02508-CCA-R3-PC, 2011 WL 3793503, at *5 (Tenn. Crim. App. Aug. 26, 2011)), *perm. app. denied* (Tenn. Jan. 18, 2019). In order to amount to ineffective assistance of counsel, a conflict of interest between an attorney and his or her client must rise to the level where the "attorney cannot exercise his or her independent professional judgment free of compromising interests and loyalties." *Id.* (citing *Thaddeus Johnson v. State*, No. W2014-00053-CCA-R3-PC, 2014 WL 7401989, at *5 (Tenn. Crim. App., Nashville, Dec. 29, 2014), *perm. app. denied* (Tenn. May 18, 2015)).

The post-conviction court found that Counsel was able to continue representing the Petitioner based on their working through the concerns the Petitioner had, thus a conflict of interest was not created by the complaint and withdrawal was not necessary. The evidence does not preponderate against this finding. Counsel testified that, after he was made aware of the Petitioner's complaint against him, he did not feel as if his ability to continue to represent the Petitioner had been affected. Counsel stated that a conflict of interest did not arise and that the Petitioner never told him directly that Counsel should withdraw; Counsel would have moved to do so upon the Petitioner's request. The Petitioner has not presented more than a vague allegation of a conflict. Accordingly, we conclude that Counsel was not ineffective for failing to request withdrawal from the Petitioner's case.

### C. Voluntariness of Plea

Finally, the Petitioner contends that his plea was not knowingly and voluntarily entered, as proven by his immediate decision to seek to withdraw his guilty plea. The State responds that the evidence does not preponderate against the post-conviction court's findings that he entered his plea voluntarily. We agree with the State.

The post-conviction court found that the Petitioner was not credible and that it was the Petitioner's decision to plead guilty after much deliberation with Counsel. In our view, the testimony and evidence support the post-conviction court's determinations. At the guilty plea hearing, the Petitioner stated that he understood his possible sentence and that the trial court would be determining his sentence. The Petitioner agreed that he had pleaded guilty to crimes in the past. The Petitioner testified that he chose to plead guilty based on Counsel's advice that he could withdraw his plea at a later date, but the post-conviction court found that the Petitioner's testimony was not credible. We agree with the post-conviction court that the Petitioner has not provided any credible evidence that his plea was not knowingly and voluntarily entered.

### III. Conclusion

14

After a thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

_____

ROBERT W. WEDEMEYER, JUDGE